IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AVIVA LIFE & ANNUITY COMPANY, and
AMERICAN INVESTORS LIFE
INSURANCE COMPANY,

            Plaintiffs,

vs.                                         Case No. 09-4025-SAC

FEDERAL DEPOSIT INSURANCE
CORPORATION,

            Defendant.

MEMORANDUM AND ORDER

This case seeks judicial review of an Federal Deposit Insurance Corporation (FDIC) insurance determination constituting final agency action. *See* 5 U.S.C. §§ 702, 704. The court finds that oral arguments would not materially assist in its resolution of the case, so denies the plaintiffs' request for oral argument.

The plaintiffs, Aviva Life & Annuity Co. (Aviva) and American Investors Life Insurance Co. (AIL), seek declaratory relief in the combined amount of $8,605,261.94 plus interest against the FDIC. Plaintiffs contend that the FDIC erred in determining that certain deposit accounts were entitled to be insured only in an aggregate amount, and contend that those accounts should instead be fully insured via "pass-through" insurance coverage under 12 C.F.R. § 330.8 or, in the alternative, under 12 C.F.R. § 330.5(b).

**Factual background**

1

On Friday, August 22, 2008, the Kansas Bank Commissioner closed the Columbian Bank & Trust Co. in Topeka, Kansas, and named the Federal Deposit Insurance Corporation (FDIC) as receiver. (Doc. 1 at ¶ 5). At closing, plaintiffs had approximately $ 11.3 million dollars in twelve deposit accounts at the failed institution. Admin. Rec. 8. The majority of the funds were held in two accounts, *****668 (containing $4,242,854.60 and labeled "Aviva Life & Annuity Operating Account"), and *****794 (containing $7,098,344.56 and labeled "American Investors Life Ins Co Inc. Operating Account") (hereinafter referred to as the "operating accounts"). *Id.* The other accounts held either $1,000 or $10,000 each and bore a variety of titles indicating association with one of a number of subsidiary companies, with account designations such as "operating account," "benefit account," "commission account," and "accounts payable." *Id*. The FDIC determined that all of the plaintiffs' accounts designated as "operating," "commission," and "accounts payable" would be aggregated as corporate accounts and entitled to $100,000 total insurance coverage, pursuant to 12 C.F.R § 330.11, but that their accounts designated as "benefits" accounts would be separately covered. The facts of record are undisputed, are well known to the parties, and will be set forth below only as necessary.

**Standard of Review**

When reviewing agency action under the APA, the Court resolves questions of law based on the administrative record, regardless of whether a party has moved for dismissal, summary judgment, or judgment on the pleadings. *See Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993). The APA sets out the

standard for judicial review of final agency action: "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In this Circuit, "[t]he critical question in answering this inquiry is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *McAlpine v. United States*, 112 F.3d 1429, 1436 (10th Cir. 1997) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971)). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* (quoting *Overton Park*, 401 U.S. at 416). Judicial review of agency action is "highly deferential." *Ecology Ctr., Inc. v. U.S. Forest Svc.*, 451 F.3d 1183, 1188 (10th Cir. 2006). A presumption of validity attaches to agency action, and the burden is on the party seeking review to establish that the challenged agency action is arbitrary or capricious. *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

**Analysis**

A.  § 330.8 v. 330.5(a)

At the time Columbian Bank & Trust failed, the Federal Deposit Insurance Act (FDIA) read, "[f]or the purpose of determining the net amount due to any depositor . . . the Corporation shall aggregate the amounts of all deposits in the insured depository institution which are maintained by a depositor in the same capacity and the same right . . ." 12 U.S.C. § 1821(a)(1)(C) (2006). The FDIA does not define "depositor," "capacity," or "right." Through the insurance regulations, the FDIC has implemented these terms by

3

recognizing different categories of accounts based on ownership. Each type of account is entitled to separate insurance up to the $100,000 limit if it satisfies certain requirements. Plaintiff's primary argument is that the FDIC relied on the "wrong rules in determining the proper insurance treatment of [the] Operating Accounts." (Doc. 21 at p. 2). Essentially, plaintiffs assert that the FDIC abused its discretion by using 12 CFR § 330.5(a) instead of § 330.8.

> Entitled "Recognition of deposit ownership," § 330.5(a), states:
>
> (1) Evidence of deposit ownership. Except as indicated in this paragraph (a)(1) or as provided in § 330.3(j), in determining the amount of insurance available to each depositor, the FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution. If the FDIC, in its sole discretion, determines that the deposit account records of the insured depository institution are clear and unambiguous, those records shall be considered binding on the depositor, and the FDIC shall consider no other records on the manner in which the funds are owned. If the deposit account records are ambiguous or unclear on the manner in which the funds are owned, then the FDIC may, in its sole discretion, consider evidence other than the deposit account records of the insured depository institution for the purpose of establishing the manner in which the funds are owned. Despite the general requirements of this paragraph (a)(1), if the FDIC has reason to believe that the insured depository institution's deposit account records misrepresent the actual ownership of deposited funds and such misrepresentation would increase deposit insurance coverage, the FDIC may consider all available evidence and pay claims for insured deposits on the basis of the actual rather than the misrepresented ownership.

Deposit account records are defined as "account ledgers, signature cards . . . and other books and records of the insured depository institution . . . which relate to the insured depository institution's deposit taking function, but does not mean account statements, deposit slips, items deposited or [canceled] checks." 12 C.F.R. § 330.1(e).

> 12 C.F.R. § 330.8 states in relevant part:
>
> (a) Funds held by an insurance company or other corporation in a deposit account for the sole purpose of funding life insurance or annuity contracts and

4

> any benefits incidental to such contracts, shall be insured separately in the amount of up to the SMDIA per annuitant...

Plaintiffs read this regulation in isolation, contending first, that the intended use of an annuity deposit account controls the determination of insurance coverage, and second, that § 330.8 does not contain any specific titling requirements, requiring the FDIC to "look behind" the deposit records to determine that intended use. Plaintiffs assert that the "operating" accounts should be separately insured under § 330.8 based upon their intended use, "no matter what the account[s are] called." (Doc. 21 at 1).

The Court disagrees. The plain meaning of Part 330 is that where, as here, deposit account records are clear and unambiguous, the FDIC "shall presume that deposited funds are actually owned in the manner indicated . . . [and] those records shall be considered binding on the depositor." 12 C.F.R. § 330.5(a). This presumption applies to every deposit account, regardless of the ownership right and capacity in which the funds are held. The recordkeeping requirement of § 330.5 is a predicate step, not a contradictory one. The court acknowledges that the other sub-parts, such as § 330.8, contain additional requirements; but these work in conjunction with the ownership presumption, not against it, and not independent from it. The presumption was adopted in combination with the FDIC's reserved right to "look behind" a deposit account record for the purpose of helping to root out fraud, not for the purpose of affording a depositor the inalienable right to "prove" that he intended to use his account in a manner different from what he represented to the institution. *See* "Clarification and Definition of Deposit Insurance Coverage." 32 Fed. Reg. 10408 (July 14, 1967), now found at 12 C.F.R. § 330.1 *et seq.* (Part 330).

In aggregating each plaintiff's "operating," "commission," and "accounts payable" deposit accounts as "corporate" accounts, the FDIC relied on the "deposit account records of the insured depository institution," presuming that each of the disputed accounts was "actually owned in the manner indicated." Specifically, the FDIC relied on the signature cards and account ledgers. Admin. Rec. Tab 1-2. In so doing, the FDIC properly determined that each plaintiff's corporate accounts would be aggregated as corporate accounts under § 330.11(a), but that the "benefits" accounts would be separately covered. Because the deposit account records are clear and unambiguous, and because the FDIC had no reason to believe that those records misrepresented the actual ownership of deposited funds, the FDIC was mandated, by regulation, to "consider no other records on the manner in which the funds are owned." § 330.5(a)(1).

Plaintiffs rely upon the Fifth Circuit cases of *Spawn v. Western Bank-Westheimer*, 925 F.2d 885 (5th Cir. 1991), and *Palermo v. FDIC*, 981 F.2d 843 (5th Cir.1993). The court is neither bound nor persuaded by those cases, as they are from another jurisdiction, involve distinguishable facts, are based on regulations which have since been significantly amended, and involve different ownership rights and capacities than does the present case. Plaintiffs' arguments are better addressed under *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984), which establishes a two-step process for testing the validity of agency regulations. The first question is "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. The second question, reached only "if the statute is silent or ambiguous with respect to the specific issue," is "whether the agency's [regulation] is based on a permissible construction of the statute." *Id.* at 843.

Although Congress has not directly spoken to the precise, account-by-account manner in which insurance determinations will be made upon the failure of an insured depository institution, the Court finds the FDIC's regulation to be based on a permissible construction of the statute, 12 U.S.C. § 1822(c). Several Circuits have detailed the swift manner in which the FDIC must operate when it takes over a failed institution, noting the compelling policy arguments supporting the FDIC's reliance on deposit account records. *See, e.g., Abdulla Fouad & Sons v. FDIC*, 898 F.2d 482, 485 (5th Cir. 1994); *Villafane-Neriz v. FDIC*, 75 F.3d 727, 732 n. 3 (1st Cir. 1996).

> Making quick determinations . . . facilitates the public's access to its savings, . . . maintains the going concern value of the failed bank, . . . [and] avoid[s] fraudulent increases in insurance coverage by preventing the creation of separate trust accounts after default has occurred.

*Villafane-Neriz,* 75 F.3d at 732 (internal citations omitted).

To accomplish the sometimes formidable tasks involved in taking over the assets of a failed institution, the FDIC has reasonably construed the FDIA not only to create a presumption that the deposit account records are controlling as to actual ownership, as allowed by Congress at 12 U.S.C. § 1822(c), but also to employ that presumption in the determination of the ownership right and capacity in which the deposit account funds are held. 12 C.F.R. § 330.5(a). The recordkeeping requirement and its attendant ownership presumption reasonably allow the FDIC to effect the intent of Congress with precision, dispatch, and objectively, preventing the uncertainty, delay, and likelihood of fraud which is inherent in the subjective intent test urged by the plaintiffs.[1] This Court

---

[1] Although the Tenth Circuit has disfavored the ownership presumption embedded in Part 330, *see Jones v. FDIC*, 748 F.2d 1400 (10th Cir. 1984), that case, unlike this one, involved a claim of fraud, in that the bank did not honor the depositor's

7

therefore finds that it was not an abuse of discretion for the FDIC to rely on the deposit account records of Columbian Bank & Trust rather than on the subjective intent of the plaintiffs.

B. The FDIC's Reversal of Its Position

Plaintiffs next contend that the FDIC's abuse of discretion is shown in its reversal of its initial determination that the disputed operating accounts should be entitled to "per annuitant" coverage. The record reveals that the FDIC articulated various positions as it attempted to determine the insurance coverage for plaintiffs' accounts. Specifically, one of FDIC's field agents, Mr. Pennington, made an internal memorandum noting that the operating accounts in question should be entitled to "per annuitant" coverage, a position confirmed by Mr. Taber. Thereafter, the FDIC took the contrary position giving rise to this appeal. Admin. Rec. Tab 3.

Plaintiffs claim that this reversal in position was arbitrarily made in order to save $8.4 million. (Doc. 19 at p. 15). The court will not consider that reason, as it is unsupported by the administrative record. Moreover, agency determinations are afforded a presumption of legality and regularity. *United States Postal Service v. Gregory*, 534 U.S. 1, 10 (2001) (citing *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926)).

The APA gives this court authority to review "[a]gency action made reviewable by statute and final agency action." 5 U.S.C. § 704. The court can find no place within the

---

specific instructions regarding his account. *Id.* at 1405 (noting that "there exists a presumption of correctness which may be overcome by proof that the records do not properly and accurately reflect the instructions of the depositor to the bank").

8

FDIA where the FDIC's "initial position," evidenced by internal memoranda or notes, is made reviewable under the APA. Nor can this court construe Mr. Pennington's internal memorandum, or any position articulated by Mr. Taber, as "final agency action." *See* 12 U.S.C. § 1821(f)(3-4). At best, the documents favoring "per annuitant" coverage are internal recommendations reflecting intermediate positions not reviewable under the APA.

C. Fiduciary Account Coverage Under § 330.5(b)

Lastly, plaintiffs contend that the operating accounts were "fiduciary" accounts under § 330.5(b). (Doc. 19 at p. 16). That regulation provides, in pertinent part,

> The FDIC will recognize a claim for insurance coverage based on a fiduciary relationship only if the relationship is expressly disclosed, by way of specific references, in the "deposit account records" (as defined in § 330.1(e)) of the insured depository institution. Such relationships include, but are not limited to, relationships involving a trustee, agent, nominee, guardian, executor or custodian pursuant to which funds are deposited. The express indication that the account is held in a fiduciary capacity will not be necessary, however, in instances where the FDIC determines, in its sole discretion, that the titling of the deposit account and the underlying deposit account records sufficiently indicate the existence of a fiduciary relationship. ...

As discussed above, § 330.5(a) provides the general presumption that a deposit account is actually owned in the manner indicated. In its bifurcated form, § 330.5(b) confirms that this recordkeeping requirement remains true for fiduciary accounts – fiduciary claims will be recognized "only if the relationship is expressly disclosed, by way of specific references" in the deposit account records of the insured depository institution, or if "the FDIC determines, in its sole discretion, that the titling of the deposit account and the underlying deposit account records sufficiently indicate the existence of a fiduciary relationship." 12 C.F.R. § 330.5(b)(1). The Court disagrees with plaintiff's

contention that § 330.5(b) grants a separate right of coverage for all accounts held by a "trustee, agent, nominee, guardian, executor, or custodian." For the operating accounts to be recognized as fiduciary accounts under this provision, the account must actually be held in a fiduciary capacity, and the depositor must meet the recordkeeping requirements of § 330.5.

The Court has reviewed the titling of the deposit accounts and the underlying deposit account records included in the record on appeal, and finds no abuse of discretion in the FDIC's determination that the operating accounts in question failed to meet the requirements of § 330.5(b).[2] No fiduciary relationship is either expressly disclosed by specific references in the deposit account records, or otherwise "sufficiently indicated" by the titling and the underlying deposit account records of the insured depository institution for the operating accounts in question.

Plaintiffs additionally rely on extrinsic evidence of their intent or usage, matters outside the titles and underlying deposit account records, including written declarations made after the Columbian Bank & Trust failed. *See* Admin. Rec. Tab 7, and Doc. 19, p. 17. But such evidence, being neither titling documents nor underlying account deposit records, is immaterial to the FDIC's determination and thus to this Court's review. *See* § 330.5(b) ("The FDIC will recognize a claim for insurance coverage based on a fiduciary relationship *only* if the relationship is expressly disclosed, by way of specific references,

---

[2]The Court finds that the email sent by Columbian Bank Acting Cashier Betty Greiner on August 19, 2008, does not fall within the definition of "deposit account records" in § 330.1(e)). But even had that email constituted a "deposit account record," the Court would find no abuse of discretion in the FDIC's finding that the email was insufficient to establish that the accounts were actually held in a fiduciary capacity.

in the "deposit account records," ... or "where the FDIC determines, in its sole discretion, that the titling of the deposit account and the underlying deposit account records sufficiently indicate the existence of a fiduciary relationship.") *See generally* 330.5(a); 12 U.S.C. § 1822(c).

Moreover, the plaintiffs have not shown that had the FDIC been permitted to rely on extrinsic evidence, it would have found that the operating accounts in question were, in fact or in law, held in a fiduciary capacity. *See* Kan. Stat. Ann. § 40-436(e) (establishing protections necessary for coverage under § 330.8 and specifically declaring that such accounts "shall be owned by the [insurance or annuity] company, and the company shall not be, nor hold itself out to be, a trustee with respect to" those deposit accounts). Accordingly, the FDIC's finding that the operating accounts in question were not fiduciary accounts was not arbitrary or capricious.

Accordingly, for all the reasons set forth above, the FDIC's determination that the operating accounts were entitled to aggregated coverage as corporate accounts shall not be set aside.

IT IS THEREFORE ORDERED that the plaintiffs' petition for review is dismissed and that the decision of the FDIC is affirmed.

Dated this 20th day of May, 2010.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge